Judgment rendered August 18, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,099-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

THOMAS NELSON                                    Plaintiff-Appellant

versus

DR. VIPUL SHELAT,                                Defendants-Appellees
DR. JORGE ALVERNIA, AND
THEIR UNKNOWN INSURERS,
JOINTLY AND SOLIDARILY

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2019-2279

Honorable Alvin Rue Sharp, Judge

* * * * *

DAVIS LAW OFFICE, LLC                Counsel for Appellant,
By: S.P. Davis, Sr.                  Thomas Nelson
    Kharmen Davis


NELSON, ZENTNER, SARTOR              Counsel for Appellee,
& SNELLINGS,, LLC                    Vipul Shelat, M.D.
By:  David H. Nelson


BREAZEALE, SACHSE & WILSON, LLP      Counsel for Appellee,
By: Harry McClellan Moffett, IV      Jorge Alvernia, M.D.


* * * * *

Before MOORE, GARRETT, and STEPHENS, JJ.

**STEPHENS, J.**

Plaintiff, Thomas Nelson, appeals a judgment by the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana, granting summary judgment in favor of defendant, Dr. Vipul Shelat.

## FACTS AND PROCEDURAL HISTORY

This medical malpractice case arises from the death of Nelson's son, Thomas Nelson, II (Nelson II). Nelson II suffered from a seizure disorder for which he had an implanted seizure control device, *i.e.*, a Vagus Nerve Stimulator ("VNS"). Dr. Vipul Shelat, a neurologist, treated Nelson II for his seizure disorder for many years. In the course of doing so, on August 7, 2015, Dr. Shelat tested the battery in Nelson II's VNS and determined the battery was low. Dr. Shelat referred Nelson II to Dr. Jorge Alvernia, a neurosurgeon, to assess the battery. After interrogating the battery of Nelson II's VNS, Dr. Alvernia scheduled Nelson II to return in eight to ten days for replacement of the battery. However, before he could return to Dr. Alvernia for the procedure, Nelson II was found dead on August 15, 2015. An autopsy revealed the cause of death was a seizure.

Nelson filed a claim under the Louisiana Medical Malpractice Act, La. R.S. 40:1299.41 *et seq.*, against both Dr. Shelat and Dr. Alvernia. The Medical Review Panel (the "Panel") unanimously found in favor of Dr. Shelat and Dr. Alvernia. Thereafter, Nelson filed a petition for medical malpractice and wrongful death against the two doctors, claiming they breached the standard of care by failing to replace the battery in his son's VNS, which Nelson alleged caused and contributed to Nelson II's avoidable and preventable death. Dr. Shelat answered, denying the allegations, and subsequently filed a motion for summary judgment. In support of his

motion, Dr. Shelat submitted his own affidavit and a copy of the Panel's written opinion. Nelson opposed Dr. Shelat's motion and provided an affidavit by Dr. Paul Edward Kaloostian. The trial court granted Dr. Shelat's motion for summary judgment, and this appeal by Nelson ensued.

## DISCUSSION

In his sole assignment of error, Nelson asserts the trial court erred by granting Dr. Shelat's motion for summary judgment because Dr. Kaloostian's affidavit creates a genuine issue of material fact regarding whether Dr. Shelat breached the standard of care by failing to replace or ensure replacement of Nelson II's VNS battery.

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Samaha v. Rau*, 2007-1726 (La. 2/26/08), 977 So. 2d 880; *Driver Pipeline Co. v. Cadeville Gas Storage, LLC*, 49,375 (La. App. 2 Cir. 10/1/14), 150 So. 3d 492, *writ denied*, 2014-2304 (La. 1/23/15), 159 So. 3d 1058. Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except those disallowed by La. C.C.P. art. 969. The procedure is favored and shall be construed to accomplish those ends. La. C.C.P. art. 966(A)(2).

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A genuine issue is one about which reasonable persons could disagree. *Hines v. Garrett*, 2004-0806 (La. 6/25/04), 876 So. 2d 764; *Franklin v. Dick*, 51,479 (La. App. 2 Cir. 6/21/17), 224 So. 3d 1130. In determining whether an issue is genuine, a court should not consider the

2

merits, make credibility determinations, evaluate testimony, or weigh evidence. *Chanler v. Jamestown Ins. Co.*, 51,320 (La. App. 2 Cir. 5/17/17), 223 So. 3d 614, *writ denied*, 2017-01251 (La. 10/27/17), 228 So. 3d 1230. A material fact is one that potentially ensures or precludes recovery, affects the ultimate success of the litigant, or determines the outcome of the dispute. *Hines*, *supra*; *Franklin*, *supra.*

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). When the motion for summary judgment is made and supported as provided in La. C.C.P. art. 966, the adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or other proper summary judgment evidence, must set forth specific facts showing that there is a genuine issue for trial. *Weaver v. City of Shreveport*, 52,407 (La. App. 2 Cir. 12/19/18), 261 So. 3d 1079.

The only documents that may be filed in support of or in opposition to a motion for summary judgment are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966(A)(4). Louisiana C.C.P. art. 967(A) provides:

3

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. The supporting and opposing affidavits of experts may set forth such experts' opinions on the facts as would be admissible in evidence under Louisiana Code of Evidence Article 702, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.

Appellate courts review motions for summary judgment *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Peironnet v. Matador Res. Co.*, 2012-2292 (La. 6/28/13), 144 So. 3d 791; *Bank of Am., N.A. v. Green*, 52,044 (La. App. 2 Cir. 5/23/18), 249 So. 3d 219.

In a medical malpractice action, the plaintiff has the burden of proving: (1) the applicable standard of care, (2) that the standard of care was breached, and (3) that as a proximate result of the breach, the plaintiff sustained injuries that would not otherwise have been incurred. La. R.S. 9:2794(A); *Johnson v. Tucker*, 51,723 (La. App. 2 Cir. 11/15/17), 243 So. 3d 1237, *writs denied*, 2017-2075, 2017-2073 (La. 2/9/18), 236 So. 3d 1262, 1266.

Expert testimony is generally required to establish the applicable standard of care and whether that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. *Johnson v. Bhandari*, 52,545 (La. App. 2 Cir. 2/27/19), 266 So. 3d 961, *writ denied*, 2019-0658 (La. 6/17/19), 274 So. 3d 572. The requirement of producing expert medical testimony is especially apt when the defendants have filed summary judgment motions and

4

supported such motions with expert opinion evidence that their treatment met the applicable standard of care. *Staten v. Glenwood Reg'l Med. Ctr.*, 53,220 (La. App. 2 Cir. 1/29/20), 290 So. 3d 280, *writ denied*, 2020-00591 (La. 9/23/20), 301 So. 3d 1184. To defeat a properly supported motion for summary judgment, an expert's opinion must be more than a conclusory assertion about ultimate legal issues. *Independent Fire Ins. Co. v. Sunbeam Corp.*, 1999-2181 (La. 2/29/00), 755 So. 2d 226; *Lee v. McGovern*, 49,953 (La. App. 2 Cir. 7/1/15), 169 So. 3d 814, 817, *writ not considered*, 2015-1489 (La. 10/23/15), 179 So. 3d 596.

The Louisiana Supreme Court has observed that "by law, the report of the expert opinion reached by the medical review panel is admissible as evidence in any action subsequently brought by the claimant in a court of law" and that "[t]his undoubtedly includes a summary judgment proceeding in a medical malpractice lawsuit." *Samaha*, *supra* at 891. It is well settled that a defendant-health care provider can use the medical review panel's favorable opinion to support a summary judgment motion. *Staten*, *supra*.

In support of his motion for summary judgment, Dr. Shelat provided his own affidavit in which he testified Nelson II had been his patient since 2002 and, upon examining him during an office visit on July 27, 2015, he found Nelson II's VNS battery indicated a low charge. He further testified that as a neurologist, he does not perform the surgical procedure necessary to replace VNS batteries; rather he refers the patient to a neurosurgeon for such task to be accomplished and, accordingly, after discovering Nelson II's low VNS battery, he followed protocol and arranged a neurosurgical consult with Dr. Alvernia's office for the replacement. In further support of his motion,

Dr. Shelat also attached a certified copy of the Panel's opinion and written reason for conclusion, which provides in pertinent part:

> The panel finds the evidence does not support a conclusion that Vipul Shelat, M.D. failed to comply with acceptable standard of care for Mr. Thomas Cleo Nelson, II. The patient had a long history of seizures, most likely from his brittle epilepsy. Mr. Nelson was on multiple medications and did have a vagus nerve stimulator (hereinafter referred to as a "VNS"). Dr. Shelat interrogated the battery of the VNS finding a low battery, but certainly not at the end of life. Dr. Shelat, who had treated Mr. Nelson for many years, recommended seeing Dr. Jorge Alvernia (neurosurgeon) to investigate the necessity of the battery replacement, as that is outside the scope of Dr. Shelat's care. Dr. Shelat appropriately referred Mr. Nelson to Dr. Alvernia, making his appointment, which appointment was missed by the patient. The use of the VNS is good treatment, but is not curative treatment. Mr. Nelson experienced seizures when the battery was charged and when it was low. The panel finds the care rendered by Dr. Vipul Shelat was appropriate and met the standard of care for a neurologist.

In support of his opposition to Dr. Shelat's motion for summary judgment, Nelson provided the affidavit of Dr. Kaloostian, in which the doctor testified he is a licensed and practicing neurosurgeon and had reviewed both Dr. Shelat's and Dr. Alvernia's records for Nelson II, as well as the autopsy report on Nelson II. Dr. Kaloostian summarized the above facts relating to Nelson II's visits with the two doctors regarding his VNS battery and his August 15 death. Dr. Kaloostian further testified:

> I am of the opinion within a reasonable Medical probability that the lack of immediate treatment of replacing the non-functioning Vagal Nerve Stimulator battery caused the death of Thomas Nelson, II and represents a definite breach in the standard of care in treatment of patients with severe seizure disorder. That Thomas Nelson, II had a variety of congenital abnormalities including acute and sub-acute pathology with his West Nile Encephalitis that made Thomas Nelson, II an extremely high risk of suffering seizures with a non-functioning Vagal Nerve Stimulator. Each patient should be evaluated based on their own specific characteristics and problems. Thomas Nelson, II should have been identified as an extremely high risk candidate for break through seizures. In this case, his Vagal Nerve Stimulator battery should have been replaced

immediately; had that been performed, he would more probably then [sic] not have been found dead on August 15, 2015 due to a seizure.

I am of the opinion that Dr. Vipul Shelat and Dr. Jorge Alvernia Silva should have changed Thomas Nelson, II's Vagal Nerve Stimulator at the time of his appointment; the failure to do so constituted a breach of the standard of care, which more likely than not and more probably than not caused Thomas Nelson, II's death.

On appeal, Nelson argues the trial court erred by granting Dr. Shelat's motion for summary judgment and finding in its oral reasons for judgment that Dr. Kaloostian's affidavit contained a conclusory opinion and did not establish any genuine issues of material fact that precluded summary judgment. Nelson asserts Dr. Kaloostian's affidavit establishes Dr. Shelat, based on his long-term treatment of Nelson II, was or should have been well aware that Nelson II's condition was high risk. Accordingly, Nelson argues there is a genuine issue of material fact whether Dr. Shelat breached the standard of care by: (1) underestimating the significance and value of the use of a fully functional VNS to control Nelson II's seizure disorder, and (2) failing to either change and replace Nelson II's VNS battery or ensure Dr. Alvernia changed and replaced it on August 7.

Nelson notes a genuine issue of material fact is one to which reasonable persons could disagree and asserts Dr. Kaloostian's expert opinion was reasonable because it was based upon his expertise and review of Nelson II's medical records and autopsy report. Therefore, as Dr. Kaloostian's reasonable opinion of the facts differs from that of the Panel, a genuine issue of material fact inevitably exists, precluding summary judgment.

7

In response, Dr. Shelat asserts the trial court correctly granted his motion for summary judgment and, likewise, correctly found Dr. Kaloostian's affidavit, as it relates to Dr. Shelat, was conclusory and lacked evidentiary value. He further asserts the trial court correctly found Dr. Shelat is a neurologist, not a neurosurgeon. Dr. Shelat argues changing a VNS battery is a surgical procedure outside the scope of a neurologist; therefore, there is no basis for Dr. Kaloostian's assertion that he should have changed the battery in Nelson II's VNS.

Additionally, Dr. Shelat takes issue with Nelson's argument that he should have known the significance and value of the use of a fully functional VNS to control Nelson II's seizure disorder; Dr. Shelat asserts he did know the significance. He argues, however, there is no evidence Nelson II's VNS was not fully functional—much like an iPhone, a VNS with a low battery life is nonetheless as fully functional as a VNS with a full charge. Dr. Shelat further argues there is no factual or legal basis for Dr. Kaloostian's conclusion that he owed a responsibility to make sure Dr. Alvernia replaced Nelson II's VNS battery. He asserts his motion for summary judgment was correctly granted because, as the Panel found, he did his job, as a neurologist, and appropriately referred his patient to a neurosurgeon.

On *de novo* review of this record, we find no genuine issues of material fact exist that preclude summary judgment in Dr. Shelat's favor. Dr. Shelat successfully established the absence of factual support for one or more elements essential to Nelson's claim. Significantly, Dr. Shelat showed that: (1) as a neurologist, he was not responsible for replacing Nelson II's VNS battery, and (2) as a neurologist, he appropriately referred Nelson II to a neurosurgeon for the battery replacement. Therefore, the burden shifted to

8

Nelson to produce factual support sufficient to establish the existence of a genuine issue of material fact or that Dr. Shelat is not entitled to judgment as a matter of law.

The only evidence presented in support of Nelson's opposition to summary judgment was Dr. Kaloostian's affidavit, and of the facts found in the affidavit, none are disputed. However, Dr. Kaloostian concluded his testimony with the following statement:

> I am of the opinion that Dr. Vipul Shelat and Dr. Jorge Alvernia Silva should have changed Thomas Nelson, II's Vagal Nerve Stimulator at the time of his appointment; the failure to do so constituted a breach of the standard of care, which more likely than not and more probably than not caused Thomas Nelson, II's death.

This statement lacks factual foundation. Dr. Kaloostian did not testify that as a neurologist, Dr. Shelat was qualified or obligated to perform the surgery necessary to replace Nelson II's VNS battery. Furthermore, Dr. Kaloostian did not provide any factual support for his assertion that Dr. Shelat was obligated to ensure Dr. Alvernia replaced Nelson II's VNS battery at the time of his appointment. Therefore, the facts Dr. Shelat presented relating to the standard of care applicable to him as a neurologist remain undisputed. While opinions of an expert are certainly permissible in an affidavit submitted in support of a motion for summary judgment, the final statement of Dr. Kaloostian's affidavit is conclusory and insufficient to satisfy Nelson's burden. Accordingly, summary judgment in favor of Dr. Shelat was proper. This assignment of error is without merit.

9

**CONCLUSION**

For the foregoing reasons, the trial court's grant of summary judgment in favor of defendant, Dr. Vipul Shelat, is affirmed.  Costs of this appeal are assessed to plaintiff, Thomas Nelson.

**AFFIRMED.**